No. 83-88

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

MARY JANE HARDY, MARY JOAN FOX,
DAN FOX, and L.O. RANCH CO., a
Mont. corp.,

Plaintiffs and Appellants,

and

ROBERT JOHN HARDY and BARBARA ANN HARDY,

Defendants and Appellants,

-vs-

LEWIS JOHN KRUTZFELDT, JUNE FRANCIS RAFFERTY,
WILLIAM J. KRUTZFELDT, JULIE ANN KRUTZFELDT,
KAREN JOYCE KRUTZELDT, EDWIN DUDLEY HARDY,
BARBARA MARIE HARDY, and GEORGE RAFFERTY,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable A. B. Martin, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Bruce Brown argued; Brown and Huss, Miles City,
Montana
Thomas Monaghan; Lucas & Monaghan, Miles City,
Montana

For Respondents:

Bruce Toole argued; Crowley, Haughey, Hanson, Toole
& Dietrich, Billings, Montana

---

Submitted:  October 26, 1983

Decided:  November 21, 1983

Filed: NOV 21 1983

Ethel M. Harrison

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Mary Jane Hardy, Mary Joan Fox, Dan Fox, and L. O. Ranch Co., plaintiffs, and Robert John Hardy and Barbara Ann Hardy, defendants, appeal from a judgment of the District Court of the Sixteenth Judicial District, Custer County, granting summary judgment in favor of the other defendants and refusing to adjudge that the right of first refusal in an agreement between the parties was invalid.

The issue here is whether an agreement providing for a right of refusal before property is offered for sale is void as constituting an unreasonable restraint on alienation and against public policy.

We hold that no justiciable controversy is presented on the facts before us in this case.

The parties to this action are the heirs of Robert F. Hardy. In his lifetime he created certain trusts, and upon his death, the trusts became operative. Later the trusts were terminated and the Hardy heirs entered into negotiation for the division of the ranch properties which constituted the corpus of the trusts. The negotiations culminated in an agreement dated November 22, 1977. That agreement divides the Hardy ranch properties into seven tracts and provides for the distribution of the seven tracts of land among seven persons designated as grantees. A right of first refusal to purchase is provided for the parties, summarized by the District Court as follows:

1. Should one or more of the named grantees desire to sell his tract, he must first offer it to any one or more of the remaining grantees, until all have refused to purchase;

- 2 -

the grantees upon receiving the offer have 60 days to accept and arrange financing; if the offer is made to more than one of the remaining grantees, the first to accept in writing is accorded priority.

2. Only after first offering to sell to all the remaining grantees can the selling grantee offer the lands to a third party.

3. If the selling grantee enters into a contract for the sale of a tract with a third party purchaser, the selling grantee must again offer to sell the lands to one or more of the other grantees until all have refused to purchase upon the contract terms; again the first grantee to accept in writing is accorded priority, and the grantee or grantees receiving the contract offer have 60 days to accept and arrange financing.

4. The preemption right is conditioned to bind any third party purchasers, successors or assigns of the original seven grantees.

5. The preemption right is to descend to the spouse and the descendants of the seven grantees named.

6. The restraint on alienation embodied in the preemption is to terminate upon the death of the last of the seven named grantees.

The plaintiffs filed a complaint for declaratory relief on March 26, 1981, in which they requested the District Court to declare that portion of the November 22, 1977 agreement relating to first refusal rights invalid and void as an unreasonable restraint on alienation. Defendants Robert John Hardy and Barbara Ann Hardy joined with the plaintiffs in this contention. The District Court granted defendants' motion for summary judgment on April 9, 1982, denying the

- 3 -

plaintiffs' motion, holding in effect, that the first refusal right was valid and not an unreasonable restraint on alienation. It is from that holding that this appeal ensued.

The basic contention of the appellants here is that the procedures for exercising the preemptive refusal provisions of the agreement are so awkward and time consuming that they render the property of the grantees unmarketable.

As far as the record here shows, there is no pending sale or offer for sale of the ranch properties, or purchase or offer to purchase the lands involved in this case which is affected by the first refusal rights in the contract. Nor does any third party appear before the court in this cause contending that the preemptive clauses are invalid as to him. We have before us only a suit for declaratory judgment under the Uniform Declaratory Judgments Act.

It is true that the purpose of the Uniform Declaratory Judgments Act is remedial, to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations;" and is to be liberally construed and administered. Section 27-8-102, MCA. It is also true that the powers vested by the statute in the courts to render declaratory judgments includes "power to declare rights, status and other legal relations whether or not further relief is or could be claimed." Section 27-8-201, MCA.

Nevertheless, this Court has on occasion refused to entertain a declaratory judgment action on the ground that no controversy is pending which the judgment would affect, and this Court attempts to avoid rendering advisory opinions. The District Court in this case touched on the problem of

- 4 -

justiciability in its order granting summary judgment, stating:

> ". . . It goes without saying that a Court will not declare a provision of a contract invalid because of conjecture. Anticipated or unanticipated problems may arise in the future which the parties might or might not then resolve, but if not, then the court by stipulation could imply conditions necessary to reasonably carry out provisions of the contract which the agreeing parties felt were important in the formulation of the written contract. In this case the parties by the agreement, believed that the lands should be kept in the family until the last of the seven grantees died."

The order of the District Court granting summary judgment here can in the circumstances be construed to mean that as far as the records here show, there was no reason for the District Court to determine that the preemptive first refusal clause was invalid.

The only thing before this Court in this case is a difference of opinion among lawyers on the legal effect of the preemptive first refusal clause. We do not have before us any litigants involved in an actual controversy who are deprived of a property right in seeking redress. Our decision here will not affect any party to the contract directly, because on this record there has not been any intent by any party to sell property outside the preemptive clause, nor any third party seeking to be relieved from the preemptive clause.

In support of their complaint, the appellants attacking the preemptive clause have postulated a series of horribles, each of which may be speculatively true, if the clause is permitted to govern. In opposition to appellant's position, the respondents have pooh-poohed the horribles, and have insisted on the legality of the clause which so far has not detrimentally affected anybody. The respondents liken the

- 5 -

preemptive clause to an ordinary trust where the corpus includes land.

No concrete controversy is here, and we are asked by the parties on each side to give an opinion merely upon hypothetical facts and abstract propositions. No litigant before us is in immediate danger of sustaining direct injury from the preemptive clause. Therefore we do not have a justiciable controversy over which the judicial power to determine real controversies may be exercised. Broad language in the Uniform Declaratory Judgments Act, section 27-8-101, et seq., MCA, may not be used as a platform for courts in this state to plunge into indefinite amorphous ponds of contract interpretation. In Chovanak v. Matthews (1948), 120 Mont. 520, 525-26, 188 P.2d 582, this Court said:

> "It is by reason of the fact that it is only judicial power that the courts possess, that they are not permitted to decide mere differences of opinion between citizens, or between citizens and the state, or the administrative officials of the state, as to the validity of statutes. Particularly is it true where a statute, regular[ly] enacted by the lawmaking branch of the government, is attacked by the citizen as being in violation of some provision or provisions of the Constitution.

> "The judicial power of the United States is vested in 'one Supreme Court and in such inferior Courts as the Congress may from time to time ordain and establish.' Sec. 1, Art. III, of the United States Constitution. The judicial power vested in the district courts and the Supreme Court of Montana, by the provisions of the Montana Constitution, extend to such 'cases at law and in equity' as are within the judicial cognizance of the state sovereignty. Article 8, secs. 3, 11, [1889 Montana Constitution.] By 'cases' and 'controversies' within the judicial power to determine, is meant real controversies and not abstract differences of opinion or moot questions. Neither federal nor state Constitution has granted such power."

The summary judgment of the District Court, insofar as it may be construed to determine by the rights of the parties under the preemptive purchase agreement, is reversed. The

cause is remanded to the District Court with instructions to dismiss without prejudice.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
              Justices

_____
Hon. Douglas Harkin,
District Judge, sitting
for Mr. Justice Frank B.
Morrison, Jr.


Mr. Justice L. C. Gulbrandson, Mr. Justice Daniel J. Shea and Mr. Justice Fred J. Weber dissent and will file written dissents later.

IN THE SUPREME COURT OF THE STATE OF MONTANA


No. 83-88

HARDY v. KRUTZFELDT


D I S S E N T


Submitted: November 23, 1983

FILED

NOV 23 1983

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Fred J. Weber respectfully dissents as follows:

I respectfully dissent from the application of our declaratory judgment law to the facts of this case. This is an ideal case for a declaratory judgment.

The plaintiffs contend that the right of first refusal summarized in the majority opinion is void as an unreasonable restraint on alienation. Deposition testimony shows that the right of first refusal was intended to keep the ranch property in the family. Because the first refusal right decends to the spouse and descendants of a deceased party and terminates only upon the death of the last named party, there are 39 people who potentially have a right of first refusal and therefore constitute the persons to whom notice is required in the event of an attempted sale. Each of such persons has a right to purchase. Even if a sale does take place to a third party purchaser, the same right extends to the remainder of such 39 persons and continues until the death of the last of the seven named grantees.

From the admitted facts, I conclude there is a significant restraint on the right of sale of each of the seven parties involved in the contract. Where a party contends this is an unreasonable restraint, that contention appears sufficient to warrant declaratory judgment.

Section 27-8-202, MCA, (a part of the Uniform Declaratory Judgment Act) in pertinent part states:

> "Any person interested under a . . . written contract . . . or whose rights . . . are affected by a . . . contract . . . may have determined any question of construction or validity under the . . . contract . . . and obtain a declaration of rights . . ."

With regard to the interpretation of a contract, the foregoing is buttressed by section 27-8-203, MCA, which provides:

> "A contract may be construed either before or after there has been a breach thereof."

This appears to negative a requirement for something in the nature of breach. It seems clear that under the specific wording of the statute, the parties are entitled to a declaration of their rights under the present facts. Apparently the majority is suggesting that there should have been a showing of an intention to sell property by one of the parties and of some type of adverse effect, or a completed sale and an objection by a third party seeking to be relieved from the preemptive clause. I do not find that type of a fact situation is necessary in order to determine that a justiciable controversy exists under the Act. As stated by this Court in Lee v. State (Mont. 1981), 635 P.2d 1282 at 1284:

> "The test of whether a justiciable controversy exists is set forth in Matter of Secret Grand Jury Inquiry (1976), 170 Mont. 354, 357, 553 P.2d 987, 990. There this Court said:
>
> "'First, a justiciable controversy requires that parties have existing and genuine, as distinguished from theoretical, rights or interest. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical or academic conclusion. Third, must be a controversy the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities be of such overriding public moment as to constitute the legal equivalent of all of them.'"

First, the parties here have a genuine and existing property interest which on its face is affected by a restraint on the

power of sale, and therefore meets the first test. Second, the judgment of this Court could effectively operate because it would determine that the restraint on alienation was to remain controlling or was in fact void. That is clearly not a philosophical or academic conclusion. Third, a conclusion by the court as to the validity or invalidity of the restraint would certainly be a judicial determination which would have the effect of a final judgment in law upon the rights of these parties. At that point it seems to me that the parties have met the tests previously stated by this Court.

In City of Billings v. Public Service Commission (Mont. 1981), 631 P.2d 1295, the City requested the court to decide whether a 1963 contract with a District was valid and binding and whether this contract required the City to supply water mains and to serve an increased district area without limitation, as well as other requests. The District Court concluded the contract was valid and binding. This Court approved that determination. We did not suggest that the City had to wait until requested to supply additional water mains or until asked to serve an increased area of the District before determining the respective rights of the parties to the contract.

In a similar manner, I do not think it is appropriate here to require a party to attempt to sell the property, to give the very extensive notices required, and to somehow prove that the restraint has reduced the value of the property. That would be difficult, time consuming and expensive.

10

Here we have a very real restraint on the right of sale which on its face will have an adverse affect on sale. The question is whether that restraint should be maintained or not. That constitutes a justiciable controversy under the Uniform Declartory Judgment Act, similar to City of Billings.

I would decide the case on its merits.

_____
Justice

We join in the foregoing dissent of Justice Weber.

_____
Justice

_____
Justice

11