In the Matter of the ESTATE OF Velma M. Bortz KELLY, Deceased,

Dudley Strawn, Plaintiff–Appellant,

Greene County Medical Center, Defendant–Appellee.

No. 95–759.

Court of Appeals of Iowa.

Nov. 27, 1996.

Peter C. Riley of the Tom Riley Law Firm, P.C., Cedar Rapids, for plaintiff-appellant.

James L. Kramer of Johnson, Erb, Bice, Kramer, Good & Mulholland, P.C., Fort Dodge, for defendant-appellee.

Heard by CADY, P.J., and HUITINK, and STREIT, JJ., but decided en banc.

PER CURIAM.

This appeal follows a jury finding of undue influence and lack of testamentary capacity in a will contest action. We conclude the district court improperly admitted evidence at trial which resulted in prejudice. We reverse the judgment and remand for a new trial.

Velma Bortz Kelly died October 15, 1993. She was 89 years of age. Three days after her death, Greene County Medical Center filed an objection to probate. The Medical Center was a residual beneficiary of a farm under a 1949 joint will between Velma and her first husband. This will was probated in 1952 following the death of Velma's first husband. The Medical Center claimed the will was mutual and irrevocable. A will executed by Velma on April 7, 1990 was subsequently presented for probate. This will named Dudley Strawn as the residual beneficiary of the farm. The Medical Center objected to the will based on lack of testamentary capacity and undue influence. The case proceeded to trial on the objection to the 1990 will.

Prior to trial, the Medical Center retained the services of Steven Anderson, Ph.D., a neuropsychologist with the Department of Neurology at the University of Iowa. His videotaped deposition was taken by counsel for the medical center on December 6, 1995 for "trial purposes to be used at the time of trial."

At the deposition, Dr. Anderson rendered an opinion favorable to the Medical Center on the issues of testamentary capacity and undue influence. Dr. Anderson's opinion was based on his review of records provided by counsel for the medical center prior to the deposition. These records were marked at the deposition as exhibit 2. Dr. Anderson identified the exhibit as "records of multiple medical facilities which have been involved in the treatment of Ms. Bortz Kelly and records I have reviewed." Counsel for the medical center repeatedly referred to exhibit 2 during the deposition as "the medical records." [1]

---

1. Some examples include the following questions propounded to Dr. Anderson by counsel for the

Medical Center:

Dr. Anderson later in direct examination identified certain notes made by local counsel for the Medical Center, marked as exhibit 3, as additional records he reviewed prior to formulating his opinions.

On cross-examination, counsel for Strawn asked Dr. Anderson if exhibit 2 also contained memorandums of interviews with prospective witnesses prepared by another attorney in the law firm retained by the Medical Center.[2] Dr. Anderson responded "I don't know." Counsel for Strawn then asked to mark the memorandums as a "deposition exhibit." Counsel for the medical center responded, "I have no objection to that and would join in the offer." Counsel for Strawn never requested the memorandums be offered into evidence. The five memorandums were subsequently marked as exhibits 15, 16, 17, 18 and 19, and no further comment or discussion about them occurred.

Shortly before trial, counsel for Strawn filed a motion in limine, in part, objecting to the admission of the memorandums marked for identification purposes at the deposition of Dr. Anderson. The Medical Center responded that any objection to the statements had been waived. The trial court overruled the motion and the case proceeded to trial on February 21, 1995.

At trial, the videotaped deposition of Dr. Anderson was presented to the jury. At the conclusion of the deposition, the Medical Center offered exhibits 15 through 19 into evidence as "interviews that were referenced in the deposition of Dr. Anderson." The court summarily admitted the memorandums into evidence over a hearsay objection by counsel for Strawn.

The jury found Velma lacked testamentary capacity at the time she executed the 1990 will. The jury also found the 1990 will resulted from undue influence.

Strawn appeals. He first asserts the trial court committed prejudicial error by admitting the attorney memorandums into evidence. He also claims the verdict was not supported by substantial evidence.

## I. Admission of Evidence

Appellate review of the admission of evidence at trial is for correction of errors at law. Iowa R.App.P. 4. The trial court is given discretion to admit evidence at trial within the framework of the governing rule of evidence and the decision will not be disturbed on appeal unless the discretion has been abused and a substantial right of a party has been affected. *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 542 (Iowa 1996).

Iowa Rule of Evidence 703 permits an expert witness to give opinions based on "facts and data" not admissible in evidence when such information is the type reasonably relied upon by experts in the particular field in forming opinions. *See Brunner v. Brown*, 480 N.W.2d 33, 35 (Iowa 1992). Thus, the rule permits hearsay evidence to be admitted, not as substantial evidence, but to explain the basis for an expert's opinion. *Id.* at 37 (limiting instruction should be given).

Rule 703 does not permit hearsay to be admitted without first satisfying the foundational requirement that it be the type of information reasonably relied upon by ex-

Q. Does exhibit 2 appear to you to be a full, complete and accurate copy of the medical records that you have previously been sent and that you have before today's deposition reviewed in preparation to rendering opinions in this case?

Q. Doctor, have you relied upon the contents of the records, the medical records, exhibit 2, in formulating opinions ...?

Q. Doctor, in reviewing the medical records, exhibit 2, did you find ...?

Q. What entries from the medical records, exhibit 2, of Velma Bortz Kelly did you find significant?

Q. Did you in your review of exhibit 2, the hospital records, find incidents and evidence ...?

Q. All these records you reviewed in exhibit 2, do they contain the observations not only of medical doctors, but also trained and licensed registered nurses and other professional health care people?

2. Dr. Anderson had apparently referred to the attorney interviews in a written pre-trial report. This report was not offered into evidence at trial or at the deposition.

perts in the field in reaching their conclusions. *Id.* The disputed memorandums in this case constituted inadmissible hearsay. Thus, the question presented is whether the Medical Center satisfied its foundational requirement. We turn to the record to resolve this question.

The record reveals Dr. Anderson identified exhibit 2 and exhibit 3 as information he relied on in rendering his opinion. There was no foundational evidence, however, concerning exhibits 15, 16, 17, 18 and 19. Notwithstanding, the medical center asserts the memorandums were included with the medical records in exhibit 2. Thus they argue when Dr. Anderson identified the medical records at the deposition, he also identified the memorandums.

■ The trial court made no finding concerning whether the memorandums were a part of exhibit 2. Nevertheless, we review the trial court's decision under the assumption it was correct, and find an abuse of discretion only where we are unable to find support for the decision in the evidence. *See Rath v. Sholty*, 199 N.W.2d 333, 336 (Iowa 1972); *See Beckman v. Carson*, 372 N.W.2d 203, 209 (Iowa 1985) (presumed trial court receives evidence for limited hearsay purpose). *See Also Citizens' Aide/Ombudsman v. Miller*, 543 N.W.2d 899, 901 (Iowa 1996) (abuse of discretion where no record to support factual conclusion of court).

· [5–7] We find no evidence to support the Medical Center's claim exhibit 2 included the disputed memorandums. Both counsel for the Medical Center and Dr. Anderson specifically characterized exhibit 2 throughout the deposition as medical or hospital records. Moreover, the Medical Center raised its claim the memorandums were included in exhibit 2 only after the conclusion of the trial, despite the hearsay objection repeatedly lodged by Strawn prior to and during trial.[3] Furthermore, if the memorandums were included in exhibit 2 as the medical center claims, there would have been no reason to mark them as separate exhibits at the deposition and to offer them at trial as separate exhibits. We conclude the memorandums were admitted at trial without the ·required foundation.[4]

■ We also reject the Medical Center's claim Strawn waived his objection to the admission of the memorandums by failing to object to them at the deposition. Our rules of procedure governing depositions generally require an objection be made during a deposition to inadmissible evidence if the grounds for excluding the evidence could have been cured at the deposition. Iowa R.Civ.P. 158(e). When the grounds for the objection could have been cured at the deposition had an objection been made, the error is waived. *See* Iowa R.Civ.P. 158(d).

The memorandums constituted inadmissible hearsay. Nevertheless, this ground for objection could have been cured by establish-

---

**3.** Just prior to oral argument on appeal, the Medical Center filed two affidavits from their trial counsel and his secretary declaring they prepared exhibit 2 prior to the deposition and recall it included the disputed memorandums. They also declared they reviewed the video taped deposition of Dr. Anderson, which shows the exhibit used by Dr. Anderson is the same exhibit they prepared prior to the deposition.

We refuse to consider the affidavits. They were created after the fact and are not properly part of the record. *See Cross v. Lightolier Inc.*, 395 N.W.2d 844, 849 (Iowa 1986); *Henning v. Director of Revenue*, 790 S.W.2d 513, 514 (Mo. App.1990). We must accept the record made by the parties and cannot consider matters outside the record. *Tratchel v. Essex Group, Inc.*, 452 N.W.2d 171, 180 (Iowa 1990). *See* Iowa R.App.P. 10(c) (identifying procedure to supplement record).

Additionally, the record reveals the videotaped deposition of Dr. Anderson was presented to the

jury, but was not made a part of the record. Instead, the transcribed deposition was marked as a court exhibit and included in the record on appeal. A videotaped deposition presented to the jury is evidence and should have been part of the record. ·See Matson v. Wilco Office Supply & Equipment Co.*, 541 So.2d 767 (Fla.Dist.Ct.App. 1989). Again, our rules of appellate procedure permit the record to be expanded and corrected, but this procedure was never followed. *See* Iowa R.App.P. 10(c), 10(d).

**4.** We observe the Medical Center actually failed to establish the foundation for the admission of the other documents used by Dr. Anderson to render his opinion. Dr. Anderson testified he relied upon the information in exhibits 2 and 3, but never testified the information was the type reasonably relied upon by experts in the particular field to form opinions on the subject. This issue, however, was never raised by Strawn.

ing the proper foundation. Strawn, however, had no reason to object to the memorandums. The Medical Center never identified the memorandums as information Dr. Anderson used to render his opinion, nor offered the memorandum into evidence. Furthermore, Strawn never offered the memorandums, but only requested they be identified. Strawn did not waive error. The district court erred in permitting the memorandums to be admitted at trial.

A presumption of prejudice arises when the trial court has received inadmissible evidence over proper objection. *Stumpf v. Reiss,* 502 N.W.2d 620, 623 (Iowa App. 1993). The presumption, however, is insufficient to support a reversal if the record demonstrates a lack of prejudice. *Id.*

We conclude the admission of the memorandums was prejudicial. The memorandums contained matters far beyond the facts established by other evidence. One memo-randum described Strawn as a "scoundrel" and indicated he had previously taken advantage of elderly women. Another memorandum indicated Strawn was "predisposed to try and cheat little old ladies out of things." This evidence was extremely prejudicial and adversely affected Strawn's substantive rights.

## II. Conclusion

We reject the other claims raised by Strawn. There is substantial evidence in the record to support the jury verdict. Strawn, nevertheless, deserves a new trial based on the prejudice from the inadmissible evidence. We reverse the judgment entered by the district court and remand the case for a new trial.

**REVERSED AND REMANDED.**